AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )   Case No. '22 MJ3833
White iPhone )
2023250100002001-002 )
("Target Device 2") )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the     Southern     District of     California    , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21USC Sec. 952 and 960 | Importation of Controlled Substance |
| 21USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:
See Attached Affidavit of Task Force Officer Lisa Luna, Homeland Security Investigations, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of ____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Lisa Luna, Task Force Officer
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: 10/17/2022

*Judge's signature*

City and state: San Diego, California      Hon. KAREN S. CRAWFORD, U.S. Magistrate Judge
*Printed name and title*

# ATTACHMENT A-2

## PROPERTY TO BE SEARCHED

The following property is to be searched:

> White iPhone Phone
> Seizure No. 20223250100002001
> ("Target Device 2")

The Target Device is currently in the possession of Homeland Security Investigations, located at 720 East San Ysidro Blvd., San Ysidro, CA 92173.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of September 15, 2022 to October 15, 2022:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of Methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

# AFFIDAVIT

I, Task Force Officer Lisa M. Luna, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s), (Collectively, the "Target Devices"):

> Black iPhone Phone
> Seizure No. 2023250100002001-002
> ("Target Device 1")
>
> White iPhone Phone
> Seizure No. 2023250100002001-002
> ("Target Device 2")

as further described in Attachments A-1, and A-2, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Jerardo CANO ("Defendant") for importing approximately 30.16 kilograms (66.49 pounds) of Methamphetamine from Mexico into the United States. The Target Devices are currently in the custody of Homeland Security Investigations and located at 720 East San Ysidro Blvd., San Ysidro, CA 92173.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Devices, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been a Customs and Border Protection (CBP) Officer since September 2000. As a CBP Officer, I am a Federal Law Enforcement Officer within the meaning of Rule 41(b) of the Federal Rules of Criminal Procedure, that is, a government agent engaged in the enforcement of the criminal laws of the United States, and thereby authorized to

request issuance of federal search and seizure warrants.

4. I am a graduate of the CBP Officer academy at the Federal Law Enforcement Training Center (FLETC) in Glynco, Georgia, and the Advanced Training Center in Harpers Ferry, West Virginia. Part of this training included course studies in, among other things, criminal law, constitutional law, search and seizures, and courtroom procedure. As a result of my training and experience as a CBP Officer, I am familiar with federal criminal and immigration laws, and my primary duties have been the enforcement of those laws.

5. I am currently a CBP Enforcement Officer assigned as a Homeland Security Investigations ("HSI") Task Force Officer ("TFO") to the San Diego Narcotics Enforcement Team ("SDNET") and have been for approximately two years and eight months. As a TFO, my responsibilities include conducting criminal investigations of the smuggling and transportation of narcotics and currency in and/or around the Southwest Border. I am a "law enforcement officer of the United States" under 18 U.S.C. § 2510(7), empowered to investigate and make arrests for offenses enumerated in 18 U.S.C. § 2516.

6. As CBP Enforcement Officer and TFO, my responsibilities included the investigation of possible violations of narcotics laws (Title 21, United States Code) and related offenses. As part of my assignments, I have interviewed countless of defendants and witnesses in drug smuggling investigations. Through my observations and these interviews, I have gained a working knowledge and insight into the operational habits of narcotics smugglers, with particular emphasis on those who attempt to smuggle illegal drugs into the United States from Mexico.

7. In preparing this affidavit, I have also conferred with other agents and law enforcement personnel who are experienced in the area of narcotics smuggling investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the facts below, or have had them related to me by persons mentioned in this affidavit.

8. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for narcotics

smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distributional quantities of hard narcotics, such as cocaine, heroin, and methamphetamine. Typically, load drivers smuggling narcotics across the border from Mexico into the United States are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle, at which time they receive instructions on how to cross and where and when to deliver the controlled substances. Narcotics smugglers and their organizations use cellular telephones, in part, because these individuals believe law enforcement is unable to track the originating and destination phone numbers of calls placed to and from cellular telephones.

9. Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I submit the following:

a. Drug smugglers will use cellular/mobile telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

b. Drug smugglers will use cellular/mobile telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c. Drug smugglers and their accomplices will use cellular/mobile telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d. Drug smugglers will use cellular/mobile telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e. Drug smugglers will use cellular/mobile telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

    f.    Drug smugglers and their co-conspirators often use cellular/mobile telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

    g.    The use of cellular/mobile telephones by drug smugglers tends to generate evidence that is stored on the cellular/mobile telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

10. Subscriber Identity Module ("SIM") Cards, also known as subscriber identity modules, are smart cards that store data for cellular/mobile telephone subscribers. Such data includes user identity, location and phone number, network authorization data, personal security keys, contact lists and stored text messages. Much of the evidence generated by a smuggler's use of a cellular/mobile telephone would likely be stored on any SIM Card that has been utilized in connection with that telephone.

11. Based upon my training and experience as a CBP Enforcement Officer and TFO, and consultations with law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I have learned that cellular/mobile telephones often contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I have learned, based upon my training, education, and experience that searches of cellular/mobile telephones associated with narcotics smuggling investigations yield evidence:

    a.    tending to identify attempts to import methamphetamine or some other federally controlled substance from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States;

    d.    tending to identify travel to or presence at locations involved in the importation of methamphetamine or some other federally controlled substance from Mexico into the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the cellular/mobile telephone; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

12. On October 13, 2022, at approximately 8:34 A.M., Defendant, applied for entry into the United States from Mexico through the San Ysidro, CA Port of Entry vehicle primary lane #21. Defendant was the driver and sole visible occupant of a silver 2021 Ford F-150 (V1) bearing California license plates. A (CBP), Canine Enforcement Officer (CEO) conducting pre-primary roving operations screened V1 with his canine and received a positive alert in the gas tank area. The CEO also noticed tampering and unusual markings in the gas tank of V1. Upon Inspection before a CBP Officer, Defendant presented his California identification card bearing his name and photograph and stated he was on his way to Carlsbad, CA with nothing to declare from Mexico. Defendant and V1 were referred to vehicle secondary for further inspection.

13. During secondary inspection, Defendant was escorted into a secondary office. An x-ray screening was conducted on V-1 which showed anomalies within all four doors.

14. To facilitate further investigation, the packages were left in place and not opened or inspected. Agents decided to try to follow V1 to its intended destination. Because of the exigencies of the situation and to avoid a longer delay which might cause the Defendant or any co-conspirators to suspect or detect that the packages had been

discovered by law enforcement, agents installed a GPS tracking device on V1 at approximately 9:03 A.M., so V1 and Defendant could leave the POE and continue to their intended destination. A tracker search warrant was immediately requested by agents and approved by Honorable Barbara L. Major a short time later.

15. V1 was followed from the San Ysidro Port of Entry and monitored via physical surveillance. The Defendant drove to a Hilton Garden Inn in Carlsbad, CA, exited V1 and went to work. Agents maintained surveillance on V1 at the same location. At approximately 7:38 P.M., Defendant drove away in V1 and began to conduct counter surveillance maneuvers such as multiple unnecessary U-turns, parking in empty industrial parking lots without exiting V1, and getting onto and immediately off the interstate. Defendant arrived at a Motel 6 in Carlsbad, CA, checked into a room and did not exit his room until the next morning of October 14, 2022. Agents attempted to conduct a knock and talk at Defendants room to no avail.

16. V1 was towed back to the San Ysidro, CA Port of Entry. A CBP Officer was assigned to inspect V1. In furtherance of the inspection, the CBP Officer discovered seven (7) packages located in the driver side door, six (6) packages in the rear driver side door, eleven (11) packages in the front passenger door, six (6) packages in the rear passenger side door and thirty (30) packages inside the gas tank of V1. In total, the sixty (60) packages were removed from V1 with a weight of approximately 30.16 kilograms (66.49 pounds). Presumptive tests of the sixty (60) packages yielded positive results for properties of methamphetamine.

17. On October 15, 2022, agents were contacted by Carlsbad Police Department and informed that Defendant was in the area of Vista, CA. A Sergeant from the Carlsbad Police Department made contact with Defendant, Defendant agreed to go with the officers to their station. Agents arrived at the Carlsbad Police Department, took custody of Defendant and transported Defendant to the San Ysidro Port of Entry for processing.

18. Defendant was arrested and charged with violation of Title 21, United States

Code, 952 and 960, Unlawful Importation of a Controlled Substance.

19. The Target Devices were found in Defendant's possession when taken into custody and seized by a Homeland Security Investigations Special Agent. Target Device 2 was being used by Defendant when approached by agents. Target Device 1 was handed over to Agents by Carlsbad Police Department along with Defendant's other personal effects. Defendant acknowledged Target Device 1 and Target Device 2 belonged to him.

20. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures, and other digital information are stored in the memory of the Target Devices. In light of the above facts and my experience and training, there is probable cause to believe that the Defendant was using the Target Devices to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as the Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Devices for data beginning on September 15, 2022, up to and including October 15, 2022.

## METHODOLOGY

21. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and

can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

22. Following the issuance of this warrant, I will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

23. Based on the foregoing, identifying, and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

24. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

25. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Devices will yield evidence of the Defendant's violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachments A-1, and A-2, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Task Force Officer Lisa M. Luna
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 17th day of October 2022.

_____
Hon. KAREN S. CRAWFORD
United States Magistrate Judge